## SMITH v. EMPIRE LUMBER CO.

### Opinion delivered January 28, 1893.

*Mortgage—When not construed to be an assignment.*

A finding of the chancellor that an instrument, in form of a mortgage, was intended to be an assignment for the benefit of creditors will be reversed where the preponderance of evidence shows that the parties intended to execute a mortgage, notwithstanding the testimony tended to show that the grantor was insolvent, that the deed conveyed nearly all of his property, and that there was no probability that he would be able to redeem it.

Appeal from Ouachita Circuit Court in Chancery.

CHARLES W. SMITH, Judge.

*Bunn & Gaughan* for appellants.

The deed of trust was a mortgage to secure *bona fide* debts, and not an assignment. 52 Ark. 30; 53 Ark. 105; 54 *id.* 229.

*Sanders & Watkins* and *Morris M. Cohn* for appellees.

Taking into consideration all the facts, the three conveyances, the intent of the parties, the insolvency of the grantors etc., it is clear that the deed of trust was an assignment. 31 Ark. 429; 50 Ark. 314; 52 *id.* 30; *ib.* 48; 1 *McCrary*, 176; 53 *id.* 101; 54 *id.* 6; *ib.* 428; *ib.* 229; 129 U. S. 329; 66 Wis. 227. The transaction was *in fact a trust to pay debts*, and not a mortgage to secure them.

HUGHES, J. On the 1st day of October, 1890, the Empire Lumber Company, a corporation doing a lumber business in Ouachita and Clark counties, being indebted to Charles K. Sithen as the cashier of the Camden National Bank, D. W. Chandler & Co., and J. A. Barnes in the respective sums of $6031.68, $1115.70 and $658,

executed a deed of trust by which it conveyed, in order to secure said indebtedness, a lot of oxen, mules, machinery and lands to H. G. Smith in trust.

Promisory notes were given to each of the above parties, due on the 2d day of October, 1890. Possession of the property was left in the Empire Lumber Company until the conditions of the deed of trust should be broken, and then the trustee was to take possession, and, on giving notice as provided in the deed of trust or mortgage, might sell the same, subject to the equity of redemption of the mortgagor. At the time of the execution of the deed of trust, it was understood and agreed, between the mortgagees and the president of the lumber company, that, as long as his business moved on smoothly, and while there was any chance for him to raise the money from other sources to take up the indebtedness covered by the notes, the mortgages should refrain from foreclosing.

After the notes were given, D. H. Barnes went to Texarkana and then to Little Rock for the purpose of making financial arrangements, but, being unsuccessful, returned to Camden and so notified appellants. They, on learning this and being informed that other creditors were preparing attachments, brought their suit to foreclose.

At the time the deed of trust was executed, the indebtedness of the Empire Lumber Company was greater than the cash value of its property, according to the testimony. And all the property which it owned, not encumbered prior, was included in this deed of trust, except a stock of merchandise at Hudson and Ashton, Arkansas, and a large amount of lumber on the yards at these points, about 740 acres of timber and $200 worth of other property.

On the same day on which the deed of trust was given to appellants, but afterwards and separately, the Empire Lumber Company executed a deed of trust to the

laborers at its mill in order to secure them in the pay roll then due, and which the company was unable to meet at that time.

To four of the laborers the company was largely indebted, and Mr. Barnes, fearing that in case of foreclosure the lumber and stock of merchandise would not, at a forced sale, fully pay them, and, in order to fully secure them, on the 2d day of October, 1890, executed a deed, absolute in form, conveying the 740 acres of timber referred to above to J. A. Barnes, but intended the same to be held by him only in trust for these four employees.

On the 3d day of October, 1890, appellants filed their bill to foreclose the mortgage, and had a receiver appointed in vacation to take charge of the property included therein.   On the 4th day of October, 1890, the interveners brought their suits at law against the Empire Lumber Company and caused attachments to issue, which were returned.   The names of the interveners and attaching creditors and amount of indebtedness claimed by each are as follows :   C. F. Penzel Company, $6067.59 ;   T. H. Bunch, $687.68 ; Wolf & Bro., $2860.87 ; H. C. Cochran, $224.25.

On or about the 17th day of October, 1890, they filed their intervening petition, setting forth their debts and suits at law, alleging that the deed of trust to appellants, taken in connection with the deed of trust to the laborers and the absolute deed to J. A. Barnes exhibited with their intervention constituted an assignment, and, being not in accordance with the assignment law, was null and void. That said deed of trust was purposely made for a sum excessively large in the interest of the lumber company, and prayed that the proceeds of the property be applied to the payment of their debts.

Some time within twelve months prior to the execution of the deed of trust sought to be foreclosed in this cause, the Empire Lumber Company had executed a deed

of trust on a large amount of property at Ashton, in Clark county, Arkansas, to secure ten one-thousand dollar bonds. T. H. Bunch held, at the time of his intervention in this cause as security for the $687.68 herein sued on, one of these one-thousand dollar bonds. C. F. Penzel Company held four of these bonds as security for its debts ; and Wolf & Bro. three bonds, all in the denomination of one thousand dollars each, as security for their debts. In rendering its decree, the court took no account of these bonds so held.

The absolute deed of D. H. Barnes was made without the knowledge of the appellants, they not even learning that it had been done for some time thereafter. The testimony shows the contemporaneous acts of the parties to the deed of trust to appellants, and the proof was that the directors of the Empire Lumber Company at first intended to make an assignment, but, after consultation with appellants, all the parties to the instrument decided that it would be better to make a mortgage instead. There was no question on the trial as to the *bona fides* of the debts.

The deed of trust involved in this action was held by the court below to be an assignment for the benefit of creditors, but, as such, not containing provisions for its enforcement provided by law for the administration of assignments for the benefit of creditors, it was at the same time for that reason held void.

The deed of trust had a defeasance clause, and was in form a conveyance of property to secure the payment of debts, with an equity of redemption reserved to the grantor. It did not purport by its terms to be an absolute appropriation of the grantor's property to raise a fund for the payment of debts. If such was the intention of the parties, it cannot be ascertained from the form of the conveyance, but must be determined from the extrinsic evidence in the case.

The laws of this State do not prohibit the prefer-
ence by a debtor of one or more creditors to others in the
payment or securing the payment of his debts; and if
made in good faith and without fraud, the security may
be enforced by the creditor to whom it is given, to the
exclusion of other creditors of the mortgagee from par-
ticipation in the proceeds of the property conveyed, save
as to any surplus, after satisfying the secured debt.

In the case of *Richmond* v. *Mississippi Mills*, 52
Ark. 30, it was held that "a deed absolute in form may
be conditional and defeasible in fact," which is familiar
doctrine, and it is also said in the same connection that
"an instrument with formal defeasance may be intended
to be and may operate as an unqualified conveyance."

It is held substantially in *Robson* v. *Tomlinson*, 54
Ark. 229, that where the instrument is in form a mort-
gage, and not an assignment for the benefit of creditors,
"the presumption, until overcome by proof, is that the
parties intended it to have the effect the law gives to a
mortgage— that is, that it should stand as security for a
debt. The fact that it provides that the mortgagor
should surrender immediate possession to the trustee for
the mortgagee does not convert it into an assignment.
To accomplish that result, it must be shown that it was
the intention that the debtor should be divested, not only
of his control over his property, but also of his title."

With these principles in view, we proceed to con-
sider whether the evidence in the case shows that the
conveyances under consideration constitute an assign-
ment, or only securities for the payment of debts.

The evidence tends to show that the Empire Lum-
ber Company was largely indebted in amounts probably
in excess of the value of its assets; that a large part of
its indebtedness was overdue; that it was desirous of
continuing its business, and, with a view to raise funds,

the president of the company visited the city of St. Louis, but was unsuccessful.

He had promised the plaintiffs security, and, upon his return from St. Louis, they insisted upon the execution by the company of the deed of trust. The company had, through the board of directors, passed a resolution to make an assignment, which was not carried into effect, the matter being held open for the time being. Upon consultation with the plaintiffs, he informed them of the resolution. They expressed a preference for a deed of trust, and insisted that the president of the company execute to the plaintiffs the trust deed to secure the payment of their debts. The president of the company assented to this and made the deed, which was ratified by the board of directors at an adjourned meeting.

Sithen, the cashier of the Camden National Bank, testified: "When we took the trust deed, I told him (the president of the company) I would give him time to get the funds; he tried but could not, and we foreclosed."

The testimony tends to show that, after the execution of the trust deed and before foreclosure proceedings were begun, Barnes, the president of the company, visited Texarkana and Little Rock to make financial arrangements, in which he failed; and Chandler, in his testimony, says: "Barnes returned from Little Rock and threw up his hands; attorneys representing Little Rock creditors were on the grounds, and we had the receiver appointed." He further said: "The receiver was not talked of when the mortgage was executed."

The conveyance in this case was in form a mortgage, with a formal defeasance clause, and, in the opinion of the court, the preponderance of the extrinsic evidence shows that it was intended by the parties to it to be a mortgage; that in making it the Empire Lumber Company did not intend to and did not part with the title to its property, without the right of redemption, and that

the transaction was not an absolute appropriation of the company's property to raise a fund for the payment of debts.

It is true that the testimony tends to show that the company was insolvent; that it conveyed very nearly all of its property; that it had nothing left after the conveyance with which to redeem; that there was no probability that it could redeem the property conveyed.

In the case of *Robson* v. *Tomlinson*, 54 Ark. 229, this court, through the Chief Justice, said: "Neither the possession of the goods, nor the unreasonableness of the debtor's expectation of paying the debt at maturity, nor his intent never to pay, is the criterion for distinguishing a mortgage from an assignment. The controlling guide, according to the previous decisions of the court, is, was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title and make an appropriation of the property to raise a fund to pay debts? If the equity of redemption remains in the debtor, his title is not divested, and an absolute appropriation of the property is not made. In arriving at the intent of the parties, therefore, the question is, not whether the debtor intended to avail himself of the equity of redemption by payment of the debt, but was it the intention to reserve the equity? If so, the instrument is a mortgage and not an assignment."

It is unnecessary to notice the cross-appeal taken in this case, as the conclusion reached by the court is in favor of the plaintiff in the original complaint, against whom the decree in the original suit was rendered below.

Let the decree be reversed, with directions to the court below to render a decree foreclosing the plaintiff's deed of trust.