## DONALD M. STUART *vs.* JOHN B. REDMAN.

### Hancock.   Opinion December 30, 1896.

*Insolvency. Evidence. Fraud. Indirect Preference.   R. S., c. 70, § 52;*
*Stat. 1887, c. 132.*

In an action of replevin against an assignee of an insolvent debtor, by a purchaser of chattels from the insolvent before insolvency, the question before the jury was whether the purchase by the plaintiff was in fraud of the insolvent law. *Held;* that the plaintiff may be inquired of as to his knowledge of the insolvent's financial condition and the property that he held and disposed of, both before and after the sale, to the plaintiff.

*Also;* that the witness' knowledge of the insolvent, his business, his property and his disposal thereof, as well as his habits, attention to business, soberness and thrift, are all material and sometimes vital, as to whether a pretended purchaser of property knew the condition of his vendor, and under the insolvent law should be held chargeable with a fraudulent purpose to aid the insolvent in disposing of the property.

Deeds, given by the insolvent or recorded during the same year, some before and some after the pretended sale of chattels to the plaintiff, are admissible in evidence, as bearing upon a contemplated insolvency.

When exceptions fail to state what the testimony is that is excluded under objection, *held;* that such exclusion of testimony is not error.

*Held;* that evidence of the state of the insolvent's bank deposits about the same time of the pretended sale is admissible, upon the foregoing issue.

The insolvent law of this State inhibits conveyances, etc., of two kinds, first, those made to creditors within four months of the commencement of proceedings, known as preferences; second, conveyances, etc., made to third persons within six months of the commencement of the proceedings with the view of preventing the property from being distributed among creditors.

*Held;* under the second clause, that an assignee may recover the property, when it appears that the conveyance was made in contemplation of insolvency, and with a view to put the property beyond the reach of creditors, and the defendant, the grantee, had reasonable cause so to believe.

See *Redman* v. *Hurley*, ante, p. 428.

ON MOTION AND EXCEPTIONS BY PLAINTIFF.

This was an action of replevin. The property in suit was thirty thousand feet, more or less, of soft-wood boards of the value of $450; two thousand feet, more or less, of hard-wood boards of the value of $40; fifteen thousand cedar shingles, more or less, of the value of $18.75; and one piano, of the value of $190.

The jury returned a verdict for the plaintiff for the cedar shingles and, as to all the other property, they returned a verdict for the defendant.

The plaintiff claimed title to all the property replevied by purchase from Colin McKenzie, declared an insolvent within six months after the purchase, and who was at one time owner of all; and introduced certain bills of sale from McKenzie covering the property.

The defendant claimed title to the articles as assignee in insolvency of said McKenzie and asserted that the alleged transfers from McKenzie to the plaintiff were void, because made by McKenzie when he was either insolvent, or acting in contemplation of insolvency, and with the view of preventing them from coming to his assignee to be distributed among his creditors, and when the plaintiff had reasonable cause to believe McKenzie was insolvent or acting in contemplation of insolvency.

It was admitted that the petition in insolvency was filed by the creditors of McKenzie, March 17, 1893, and the defendant was appointed assignee and received his assignment May 10, 1893.

The bill of sale of the shingles is dated September 9, 1892; that of the piano, December 12, and that of the lumber, December 20, 1892.

Besides the exceptions by the plaintiff to the admission of evidence, which are found in the opinion, the plaintiff also took exception to the following portion of the charge of the presiding justice:—

"Then the defendant says that you must also examine these transactions in the light of all the surroundings of the parties; observe just what attitude Mr. McKenzie occupied at that time in relation to other creditors, as well as to this plaintiff, for the pur-

pose of determining whether in fact he was insolvent or acting in contemplation of insolvency; secondly, so far as it throws any light on that question, whether this plaintiff, not that he knew that he was insolvent, not that he actually in any other way participated or aided in consummating the fraud, but simply whether this plaintiff had reasonable cause to believe that Colin McKenzie was insolvent or acting at that time in contemplation of insolvency, and that he was doing this for the purpose of preventing the property from being equitably and equally distributed among his directors.

"An insolvent debtor may transfer his property for a fair equivalent and for an honest purpose for reasons which have been explained; because the equivalent will pass to the creditors and they lose nothing by it. It takes the place of the property. But the legislature anticipated that it is often much more difficult to follow money than specific property which is in bulk; and hence it says that if within the period named of six months he makes this assignment for the purpose of preventing it from coming to his creditors, and to a person who has the cause to believe, which I have explained, it shall not be a valid sale.

"No other conspiracy is required to invalidate the sale than that which is involved in the simple cause to believe, on the part of the person who thus purchases this property; under this statute no other fraudulent purpose or actual participation than that which is involved in the simple cause to believe that the man was insolvent or acting in contemplation of insolvency and that he was making these transfers for the purpose named here."

*H. E. Hamlin,* for plaintiff.

It was error to admit the deeds offered by defendant, as it was not shown or offered to be shown that plaintiff had any connection with them or knew that they were given. So with the testimony of Parsons as to McKenzie's dealings with the bank.

None of this testimony offered by defendant had any tendency to show that plaintiff had reasonable cause to believe McKenzie insolvent or contemplating insolvency.

In an action brought by the assignee of an insolvent debtor to

recover back money paid by the debtor by way of preference, it is incumbent on the plaintiff to establish by competent and sufficient evidence, that the defendant, at the time of receiving the money, had reasonable cause to believe the debtor insolvent; and if there is no evidence to show that the defendant was aware of any fact indicating the debtor's insolvency, such as a failure to meet debts which had fallen due, or an excess of liabilities over the means of meeting them, the judge may properly direct a verdict for the defendant. *Everett* v. *Stowell*, 14 Allen, 32.

The instructions of the presiding justice upon the point as to plaintiff's reasonable cause to believe the insolvency of McKenzie were misleading and did not present to the jury the precise question necessary for them to determine.

In *Morey* v. *Milliken*, 86 Maine, 464, HASKELL, J. says:—

"Having reasonable cause to believe" is defined by our court in the language of the Supreme Court in *Grant* v. *Nat. Bank*, 97 U. S. 80, to mean:—'It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such knowledge of facts as to induce a reasonable belief of his debtor's insolvency in order to invalidate a security for his debt. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be willing to trust him further; he may feel anxious about his claim and have a strong desire to secure it, and yet such belief as the act requires may be wanting.' *King* v. *Storer*, 75 Maine, 63. That definition is, 'knowledge of such facts as to induce a reasonable belief' of the resultant fact, insolvency; hardly short of knowing it."

*A. W. King*, for defendant.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, STROUT, JJ.

HASKELL, J. Replevin of certain chattels from an assignee of an insolvent debtor, by a purchaser thereof from the insolvent before insolvency.

The question at issue before the jury was whether the purchase by the plaintiff was in fraud of the insolvent law.

The plaintiff took the stand as a witness, and defendant was allowed to interrogate him concerning his knowledge of the insolvent's financial condition and the property he held and disposed of, both before and after the sale to the plaintiff, to which the plaintiff has exception; but it is not well taken. The witness' knowledge of the insolvent, his business, his property and his disposal thereof, as well as of his habits, attention to business, soberness and thrift, all are material and sometimes vital, as to whether a pretended purchaser of property knew the condition of his vendor and should be chargeable with a fraudulent purpose in disposing of the same.

Exception is also taken to the admission in evidence of twenty-three deeds from the insolvent, either given or recorded during the same year, some before and some after the pretended sale of chattels to the plaintiff. These deeds were clearly admissible as bearing upon a contemplated insolvency.

Exception is taken to the exclusion of the testimony of a witness, as to what he said in the presence of both plaintiff and the insolvent; but what the conversation was about or when it occurred, the case does not show. It does not, therefore, appear to have been material.

Exception is taken to the admission of evidence showing that the insolvent's deposit in bank December 22, 1892, was $28.01, that on the next day it was $3028.01, of which $3000 was drawn by check. One of the sales to plaintiff was December 12, and another December 20, 1892. Insolvency proceedings were filed by creditors March 17, 1893.

This evidence, taken in connection with the sales of property and assets shown when insolvency followed, might have a strong bearing upon contemplated insolvency. It might negative it, or it might strongly indicate it, according to its relation with other conduct or conditions of the debtor. It was clearly admissible.

Exception is taken to the charge of the presiding justice touching what knowledge on the part of plaintiff might charge him with the consequences of his vendor's fraud. The justice points the

jury to the transactions of the insolvent, to observe his attitude towards his creditors, to see whether he was acting in contemplation of insolvency, and whether the plaintiff had reasonable cause to believe it. Some might draw from the language an inference of what the justice thought the logical inference from the facts ought to be, but that is not error. All men cannot give the same rule in the same language, and yet the same rule may be given by them all. We think the rule given was that required by the act of 1887, c. 132.

That act, amendatory of R. S., c. 70, § 52, inhibits two classes of acts, first, conveyances, etc., made to secure existing creditors, known as fraudulent preferences; second, conveyances, etc., made with a view to prevent the property from being distributed among creditors under the insolvent law. The latter inhibition applies to this case. If the conveyance to the defendant was made in contemplation of insolvency, and with a view to put the property beyond the reach of creditors, and the defendant had reasonable cause to so believe, and the conveyance was made within six months of insolvent proceedings, the same may be avoided by the assignee who may recover the property.

Finally, it is argued that defendant could not, of his own motion, take the property until he shall have first, by some procedure, annulled the sale to the plaintiff. *LaPage* v. *Hill*, 87 Maine, 158, is cited in support of the doctrine, but it does not support it. That case was trespass. This, replevin. There, the fraudulent conveyance might be shown in reduction of damages. Here, it may be shown to prevent the recovery of property by a person to whom it does not belong. If there were a trespass by the officer or assignee in taking this property, a remedy for that wrong still remains, although damages may be nominal. In *LaPage* v. *Hill*, supra, the property had been delivered to the mortgagee, and was taken from him by the messenger.

The evidence is conflicting. The case has been twice tried. We cannot say that the verdict is not supported by evidence. That depends very much upon where the truth lies, and the jury said it was with defendant.

*Motion and exceptions overruled.*