BARNES, Assignee, Appellant, vs. NATIONAL BANK OF OSHKOSH, Respondent.

*May 4 — September 28, 1897.*

*Foreign judgment: Fraudulent conveyances: Contemplation of insolvency: Voluntary assignments.*

1. Chattel mortgages on property in another state, executed and filed in that state prior to the making of a voluntary assignment by the mortgagor in this state, were adjudged valid by the courts of the former state in an action between the mortgagee and attaching creditors, in which the assignee was made a party by publication but did not appear. *Held,* that the judgment was binding upon the assignee as to tangible property whose actual *situs* was in the state where it was rendered.

2. In order to render a chattel mortgage void under sec. 1693a, S. & B. Ann. Stats., because made by an insolvent debtor within sixty days prior to the making of a voluntary assignment, in contemplation of such assignment or of insolvency, *the debtor,* at the time of executing the mortgage, must have contemplated the making of the assignment or the institution of insolvency proceedings under the statutes relating to the discharge of insolvent debtors. A mere expectation or apprehension of inability to meet business obligations is insufficient.

APPEAL from a judgment of the circuit court for Fond du Lac county: N. S. GILSON, Circuit Judge. *Affirmed.*

This is an action to set aside certain chattel mortgages and assignment of accounts, on the ground that the same were made by insolvent debtors within sixty days prior to the making of a voluntary assignment, and in contemplation of such assignment or of insolvency. The action was tried by the court, and the facts, as found by the court, were substantially as follows:

In September, 1890, and for some time prior, Hoxie & Mellor were residents of Wisconsin, and constituted a firm of that name, and as such were doing a large lumber business, having manufactories and lumber yards both in the state of Wisconsin and in the state of Michigan. Said firm was at that time actually insolvent, and had been so for several months. On the 1st day of September aforesaid the firm was indebted to the defendant, which was a national bank of the city of Oshkosh, Wisconsin, in the sum of $65,000, upon commercial paper, part of which was due and part not due, and was also largely indebted to said bank as indorser upon commercial paper. On the 1st of September aforesaid the firm made chattel mortgages on its lumber and other personal property and its manufacturing plant at Marenisco, Michigan, also upon its lumber and other personal property at its lumber yards in Bessemer and Ironwood, also in the state of Michigan; also a mortgage upon certain of its real estate in the county of Gogebic, in the state of Michigan, to the *National Bank of Oshkosh*, to secure the firm's primary indebtedness to said bank; and at the same time made to the said bank an assignment of its accounts belonging to the business transacted at its Michigan yards and running against residents of the state of Michigan, as security, in the first instance, for its indebtedness as indorser upon commercial paper held by said bank, and thereafter as security for any amount remaining unpaid upon the commercial paper whereon the firm was primarily liable. Said mortgages were duly filed and recorded in the proper offices in the state of

Michigan.    On the 6th of September, 1890, said firm, as co-partners, made a general assignment in the state of Wisconsin for the benefit of its creditors, which assignment was in all respects duly and properly executed according to the laws of Wisconsin; but no copy of such assignment, or of the assignee's bond, was filed in the office of any clerk of the court in the state of Michigan.    Said assignment was made to Charles V. Bardeen, Esq., who duly qualified and entered upon his trust; but he did not take possession, or attempt to take possession, of any personal property or real estate mortgaged to the defendant in the state of Michigan, nor of the books of account of the firm in Michigan.    Immediately after the taking and filing of the mortgages given to the bank, a large number of creditors of the firm, amounting to more than $100,000, commenced attachment proceedings in the state of Michigan, and attached the mortgaged property, claiming that the said mortgages were fraudulent and void as to creditors.    On the 11th of March, 1891, the defendant bank commenced an action in the circuit court of Gogebic county, Michigan, a court of general jurisdiction, to foreclose said real-estate and chattel mortgages, and to determine the validity thereof and of the said assignment of accounts, making the said assignee a defendant in such action, and also the attaching creditors.    The assignee did not appear in said action, and was served upon by publication and mailing.    A receiver was appointed in said action, who took possession of the personal property described in the chattel mortgages. Many of the attaching creditors appeared in the action, and defended the same on the ground that the mortgages were fraudulent and void; but upon trial, in which judgment was rendered July 23, 1892, it was held that the mortgages were valid mortgages, and the assignment of accounts were all valid.    This judgment was affirmed upon appeal by the supreme court of the state of Michigan, in the case of *National Bank of Oshkosh v. First Nat. Bank of Ironwood,* 100 Mich.

485.   Some time during the progress of the Michigan litiga-
tion, Mr. Bardeen resigned as assignee, and the plaintiff,
*Barnes*, was appointed in his place and duly qualified.   The
present action was commenced by service of summons Octo-
ber 3, 1890, but no complaint was served till the 11th day
of September, 1891.

In addition to these facts, the circuit court found that there
was no satisfactory proof to show that, at the time of the
making of the mortgages and assignment of accounts, the
said Hoxie & Mellor, or either of them, were in contempla-
tion of making the general assignment for the benefit of
creditors which was made September 6th following, or of
insolvency, within the meaning of sec. 1693*a*, S. & B. Ann.
Stats.   The court also found, as conclusions of law, that
the mortgages and assignment of accounts were valid when
made, and were not invalidated by the subsequent assign-
ment; that the Michigan judgment is a bar to the claim of
the plaintiff herein; and that the complaint should be dis-
missed.

From judgment dismissing the complaint in accordance
with the findings, the plaintiff appealed.

*C. W. Felker*, attorney, and *Charles Barber* and *A. E.
Thompson*, of counsel, for the appellant.

For the respondent there were separate briefs by *Hooper
& Hooper*, attorneys, and *Gabe Bouck*, of counsel, and oral
argument by *Moses Hooper* and *Mr. Bouck*.

The following opinion was filed May 21, 1897:

WINSLOW, J.   It is difficult to see why the Michigan judg-
ment is not a perfect bar to the maintenance of this action,
so far as the chattel mortgages are concerned.   The mort-
gages covered personal property within the jurisdiction of
that court.   They were executed and filed prior to the exe-
cution of the assignment.   They were valid by the laws of
the state of Michigan when executed, and their validity has

been solemnly adjudged in a proper action brought for the purpose in a court of competent jurisdiction, to which the assignee was a party; said judgment having been rendered nearly four years before the trial and judgment in the present action.   Why this judgment was not valid and binding upon the assignee as to tangible personal property, like lumber and logs, whose actual *situs* was in Michigan, we are unable to perceive.   As to the book accounts, there may indeed be a serious question, because it may be, and it is argued with much force, that their *situs* is in Wisconsin, where their owners resided, and, hence, that the title to them could not be affected by the Michigan decree, in the absence of personal service upon the assignee or his voluntary appearance in the action.

We are relieved, however, from consideration of these questions by the finding of fact to the effect that the evidence does not show that the transfers to the bank were made by Hoxie & Mellor in contemplation of the making of an assignment or of insolvency.   We cannot say that the finding is against the weight of the evidence, consequently it must stand; and so long as it stands it is a complete bar to the maintenance of this action.   The mortgages and assignment are not attacked as having been made with intent to defraud creditors, but simply as being within the terms of sec. 1693*a*, S. & B. Ann. Stats.   In order to come within the prohibition of that section, they must have been made (1) by an *insolvent debtor*, (2) within sixty days prior to the making of the assignment, (3) in contemplation of such assignment or of insolvency, (4) to a creditor who knew, or had reasonable cause to believe, the debtor insolvent.   All of these conditions must concur, in order to make a transfer void under this section.

We are quite well satisfied that "contemplation of insolvency," in this section, means contemplation *by the debtor* of the institution of insolvency proceedings under ch. 179, R. S., and

does not mean mere expectation or apprehension of inability to meet business obligations, or of failure in common parlance. The section in question was first enacted as ch. 349, Laws of 1883, and its object was simply to prevent and abolish preferences in voluntary assignments. As preferences might easily be made by first giving a mortgage to the favored creditor, and then executing a general assignment, the provision under consideration was put into the statute to meet any such evasion of the law. Its purpose was to prevent preferences, whether in the assignment or outside of it, but not to prevent honest transfers made in the hope of continuing in business. Viewed in this light, we think the argument is conclusive that the law means an intention by the debtor to make an assignment, or take advantage of the insolvent law. The debtor must be in fact *insolvent* under the terms of the law, at the time of the transfer. The law has no application unless he is *insolvent* at that time. The word is here used undoubtedly in its ordinary sense of inability to meet his obligations as they fall due. This being the necessary situation, it would be absurd to say that the words "in contemplation of insolvency" mean that the debtor contemplates a condition to arise in the future which already exists. *Insolvency*, in its ordinary sense, must exist when the transfer is made; but, to avoid the transfer, there must be in the mind of the debtor an expectation or design that he will do something else, and that thing is that he will make an assignment, or commence proceedings in insolvency; and by this means circumvent the statute against preferences. This construction makes the statute logical and sensible, and we adopt it.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied September 28, 1897.