INTERNATIONAL LIFE INSURANCE CO. *v.* VAUGHAN, RECEIVER.

Opinion delivered July 13, 1914.

1. PREFERENCES—INSOLVENT CORPORATIONS—"IN CONTEMPLATION OF INSOLVENCY."—In order to avoid a transfer or preference made by a debtor in contemplation of insolvency, within Kirby's Digest, § 951, the debtor must have been, in fact, insolvent under the terms of the statute at the time of the transfer, and there must have been in his mind an expectation or design that he would make an assignment or commence proceedings in insolvency.

2. PREFERENCES—INSOLVENT CORPORATION.—In order to avoid a preference under Kirby's Digest, § 951, the person to whom a preference has been given must have had reasonable cause to believe that the debtor was insolvent at the time.

3. PREFERENCES—CONVEYANCE BY INSOLVENT CORPORATION—KNOWLEDGE OF TRANSFEREE.—Appellant held a certificate of deposit in a bank and loaned the bank an additional sum, taking a deed of trust

covering the whole indebtedness. The bank was insolvent at the time the deed of trust was executed and delivered, but no one knew it except the managing officer of the bank. *Held*, the transfer was not a preference that could be set aside under Kirby's Digest, § 951, as the appellant acted in good faith and had no knowledge of the bank's condition.

4.  CORPORATIONS—AUTHORITY OF OFFICERS—EXECUTION OF DEEDS.—A corporation will be bound by the deed of its officers when the evidence shows that the officers were in the habit of making such deeds, and the same was authorized by the by-laws.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

### STATEMENT BY THE COURT.

This suit was instituted by the appellee, as receiver of the Valley Savings Bank, against appellant and others to cancel certain conveyances which he alleged constituted an unlawful preference in favor of certain creditors of the defunct bank. The facts are substantially as follows:

The Valley Savings Bank was engaged in the banking and real estate business in the city of Argenta. The International Life Insurance Company held certificates of deposit of the bank amounting to $9,000. In June, 1913, W. W. Hurst, the president of the bank, applied to appellant for a loan of $10,000. He stated that a customer of his bank, who had on deposit large sums, intended to withdraw about $12,000. To supply the cash reserve with the necessary funds, the bank needed the additional amount which it sought to borrow from the appellant. Hurst, also fearing that the appellant would call for the amount of its certificates of deposit, was anxious to arrange with appellant to postpone demand for the amount of these certificates until the first of December, 1913. In order to induce the appellant to comply with this request of Hurst, he represented that the bank was perfectly solvent. The appellant sent representatives to Little Rock to look into the situation and to ascertain whether or not it would loan to Hurst the amount of money he desired and extend him the time for

the payment of the certificates of deposit as he requested. After discussing the matter with Hurst and other parties and making such examination as they could, and after satisfying themselves as to the security offered, the representatives of appellant agreed with Hurst that appellant would let the Valley Savings Bank have $5,000 cash, the bank to execute its obligation for the sum of $14,000, the said sum representing the total amount of the certificates of deposit, with interest, and the cash to be advanced. Hurst agreed to execute a deed of trust upon certain real property situated in Little Rock, Argenta and Hot Springs, which he claimed he owned in his individual right.

The note for this $14,000 was executed on June 14, and the deed of trust, conveying the property therein mentioned, was executed June 16, 1913. On the 20th day of June, 1913, one of the stockholders of the Valley Savings Bank instituted proceedings to have the bank declared insolvent and a receiver appointed to take charge of its assets, which was done.

The receiver brought this suit against the appellant and others, alleging the insolvency of the Valley Savings Bank, and that the appellant knew of such insolvency at the time the conveyance sought to be set aside was executed; that Hurst and Strickland, who were president and secretary, respectively, of the Valley Savings Bank, were also officers and directors of the appellant; that because of their interest in the appellant company they executed the deed of trust mentioned for the purpose of giving the appellant an unlawful preference over the other creditors of the defunct bank.

The appellant denied the allegation as to the insolvency of the bank at the time the deed of trust was executed, and alleged that if it was insolvent appellant had no knowledge thereof. Denied that Hurst and Strickland were officers and directors in the appellant company. Denied that it confederated or conspired with Hurst and Strickland, or any of the others mentioned, to obtain any unlawful preference to the prejudice of

other creditors of the bank. It denied that the sale and conveyance of the property mentioned in the deed of trust was executed for the purpose of obtaining any unlawful preference by it over other creditors of the Valley Savings Bank. It denied that the deed of trust was made in contemplation of the insolvency of the bank, and set up that the property described in the conveyance belonged to Hurst individually. It alleged that the conveyance was valid for the full amount mentioned and secured thereby, and prayed for judgment with costs.

The chancellor, after hearing the evidence, which is quite voluminous, decreed that the deed of trust was void so far as it attempted to secure the $9,000 evidenced by the certificates of deposit due from the bank to the appellant, but held that it was valid as to the $5,000 advanced to the bank at the time the conveyance was executed.

Other facts stated in the opinion.

*Norwood & Grant,* for appellant.

1. This suit was brought under section 951, Kirby's Digest. Appellant did not seek a preference, nor was the Valley Savings Bank seeking to give a preference to appellant *either in contemplation of insolvency or otherwise.* The extension of time of payment of a matured debt is sufficient consideration for a promissory note. 96 Ark. 105. The transaction was *bona fide,* and the chancellor erred in cancelling the conveyance. 98 Ark. 298. Prior to Kirby's Dig., § 951, preference of creditors was not prohibited. 21 S. W. 225. If the conveyance was in good faith it should not be cancelled. The burden was on appellee to show fraud. 92 Ark. 518; 14 *Id.* 79; 12 Ohio 315; 11 Atl. 31; 22 Cyc. 1289, and note; see 5 Thompson on Corp. 982; 79 N. Y. Supp. 444; 56 Atl. 717; 70 N. W. 149; 32 N. E. 855; Thompson on Corp. 6176, and note 109.

2. As long as a corporation is a "going concern" it has a right to borrow money and secure payment of same. 34 Pac. 629; 41 N. E. 185; 72 N. W. 749; 2 Thomp. on Corp., § 6178.

3. It was sufficient to prove the president's authority in the usual way. 2 Thomp. on Corp. (2 ed.) 515; 32 Ark. L. R. 943; 103 Ark. 283.

*X. O. Pindall* and *E. L. McHaney,* for appellee.

No preference of creditors is allowed among creditors of insolvent corporations. Kirby's Dig., § 949-951. The only question is, therefore, was the bank insolvent, and was the conveyance a preference. If so, it was unlawful. 61 Minn. 279; 63 N. W. 728; 48 Minn. 292; 51 N. W. 611; 36 Minn. 364; 31 N. W. 363. There is no error.

WOOD, J., (after stating the facts). It could serve no useful purpose to set out in detail the evidence bearing upon the issue of the alleged insolvency of the bank at the time of the execution of the deed of trust in controversy. This issue was purely one of fact. The chancellor found that the Valley Savings Bank, at the time the conveyances in controversy were executed by it to the Southern Trust Company, as trustee, "was then and had been for some time prior thereto wholly insolvent, and that it was known to be so by its president, W. W. Hurst; that said conveyances of said real estate were made in contemplation of insolvency, and were, therefore, an unlawful preference in favor of the International Life Insurance Company to the extent of $9,000 over other creditors of the Valley Savings Bank."

It suffices to say that we are convinced, from a careful examination of the testimony, that the chancellor was correct in his finding of fact; at least, his finding is not clearly against the preponderance of the evidence, that the Valley Savings Bank, at the time of the alleged preferential conveyances, was wholly insolvent, and that this was known to be so by its president, W. W. Hurst. But it does not follow from this finding that the chancellor was correct in his conclusion of law, that the conveyances constituted an unlawful preference in favor of the appellant.

Our statute provides as follows: "No preference shall be allowed among the creditors of insolvent corporations, except for the wages and salaries of laborers and employees." Kirby's Digest, § 949.

"Every preference obtained or sought to be obtained by any creditor of such corporation * * * and any preference sought to be given by such corporation to any of its creditors in contemplation of insolvency shall be set aside by the chancery court." Sec. 951, *supra.*

Before the passage of the above statute known as the Insolvent Corporation Act, *bona fide* preferences in favor of creditors were valid under our laws. See *Smith* v. *Empire Lumber Co.,* 57 Ark. 222.

(1) Since the passage of the above act it will be observed that the preferences that are inhibited are those made in contemplation of insolvency.

The words, "in contemplation of insolvency," have been interpreted by various courts in States where such statutes exist. The meaning given to these words by these courts is very well stated in 22 Cyc., p. 1289, subdivision 2, as follows:

(2) "In order to avoid a transfer or preference made by a debtor in contemplation of insolvency within the usual inhibition of the statutes, the debtor must have been, in fact, insolvent under the terms of the law at the time of the transfer, and there must have been in his mind an expectation or design that he would make an assignment or commence proceedings in insolvency."

The cases are collected in a note to the text.

The same volume, under the head of "Creditor or Transferee," page 1290, says: "The rule is almost universal that, in order to avoid a preference under the insolvency laws, the person to whom a preference has been given must have had reasonable cause to believe that the debtor was insolvent at the time."

In all the States having insolvent laws the words, "in contemplation of insolvency" are used in the statutes, and the authorities are practically unanimous in their interpretation.

In *Barnes* v. *Natl. Bank of Oshkosh,* 97 Wis. 16, where a mortgage conveyance was attacked as invalid under the insolvency statute, the court held that the debtor, at the time of executing the mortgage, must have contemplated the institution of insolvency proceedings under the statute relating to the discharge of insolvent debtors. In that case the court said:

"But to avoid the transfer there must be in the mind of the debtor an expectation or design that he will do something else, and that thing is that he will make an assignment or commence proceedings in insolvency and by this means circumvent the statute against preferences." The court further said:

"'Contemplation of insolvency' means contemplation by the debtor of the institution of insolvency proceedings and does not mean mere expectation or apprehension of inability to meet business obligations or of failure in common parlance. Its purpose was to prevent preferences and not to prevent honest transfers in the hope of continuing in business."

In *Kells* v. *Webster,* 71 Minn. 276, the court had under consideration a conveyance that was alleged to have been made "in contemplation of insolvency." The court in that case used this language:

"While, on the one hand, it is not necessary, in order to avoid a conveyance as a forbidden preference that the purchaser shall actually know that the vendor is insolvent, yet it is not sufficient that he entertains a mere suspicion that the vendor may be insolvent. While he can not shut his eyes to suspicious circumstances which should put him on inquiry, yet he must have reasonable cause to believe that his vendor is insolvent."

This was the construction given to the provision in the Federal Bankrupt Act from which we borrowed it.

In *Stewart* v. *Redman,* 89 Me. 435-440, it is said:

"If the conveyance to the defendant (transferee) was made in contemplation of insolvency and with a view to put the property beyond the reach of creditors, and

the defendant had reasonable cause to so believe, the same may be avoided," etc.

In *Haskin* v. *James,* 96 Cal. 258, 31 Pac. 36, it is held:

"Where the transferee of valuable property of an insolvent firm did not know or have reasonable cause to believe that the transfer was made to prevent the property from coming into the hands of their assignee in insolvency or to defeat the object of the insolvent act, and paid full consideration in good faith, he is not liable to the assignee in insolvency appointed within a month after such transfer."

The authorities on the subject of the knowledge or intent of the creditor or transferee are collated in volume 28 of the American Digest, title, "Insolvency," § 89.

The authorities are too numerous to quote more extensively, but the excerpts above announce the principles upon which the case at bar must be decided.

(3) Applying these principles to the facts disclosed by this record, we are of the opinion that the evidence is not sufficient to show that the appellant, at the time of the execution of the conveyance in trust, knew that the Valley Savings Bank was insolvent, or that it had reasonable cause to believe that same was insolvent. The evidence is not sufficient to show that the appellant knew, or had reasonable cause to believe, that Hurst, in negotiating the transaction which was consummated in the conveyance which is sought to be set aside, was doing an act in contemplation of insolvency. Even none of the officers of the bank, except Hurst, seemed to know of its financial condition. Certainly, they did not know it was insolvent. Hurst, to all outward appearances, was conducting the affairs of the bank so as to create the impression that it was a prosperous institution and in a flourishing condition. The reports which were on file indicated that. It had, up to that time, so far as this record discloses, not failed in any particular to meet its obligations and was conducting its business in due course.

While the fact was that the bank was insolvent, Hurst, who was the controlling spirit of the institution, and, to all intents and purposes, the bank, so far as the management and conduct of its business was concerned, was the only individual who had knowledge, before insolvency proceedings were instituted, that the bank was insolvent. The cashier of the bank testified that he didn't know that it was insolvent. Likewise the secretary; and George W. Rogers, the cashier of the Bank of Commerce, with whom the Valley Savings Bank transacted its local business, testified that he didn't know that the bank, at that time, was insolvent. Judge Kavanaugh, president of the Southern Trust Company, testified that he "hadn't heard a word about its being in trouble of any kind." These gentlemen were prominent business men and bankers in the city of Little Rock. Hurst, so it appears, had so completely succeeded in covering up the real financial status of the institution of which he was president, that even other local banks and the people in the community with whom he did business were not advised of the financial straits in which the institution was found to be after it went into the hands of a receiver. Then, of course, the real situation was discovered. The representatives of the appellant who conducted the negotiations for the loan, and who inquired into the condition of the bank and the securities that Hurst was offering for the same, all testified that they knew nothing whatever of the insolvent condition of the bank or that Hurst was contemplating insolvency at the time the conveyance in controversy was executed. On the contrary, their testimony shows that Hurst made such representations to them as were calculated to induce them to believe that the bank was not insolvent, that while Hurst was negotiating to secure the loan, it was to protect the cash reserve of the bank in view of the contemplated withdrawal of a large deposit by one of the customers of the bank. Their testimony shows that Hurst represented that with this loan, and with an extension of time on the part of appellant

for the payment of the certificates of deposit, the bank would have ample funds with which to meet all of its obligations.

It is unnecessary to set out this testimony in detail. It shows that, upon inquiry of Rogers, Kavanaugh and others who were prominent in banking circles of the city, and after an examination of the property which Hurst was offering as security, they were led to believe that the institution was in a perfectly solvent condition and that Hurst, instead of contemplating insolvency by the loan he was making and which he was giving the conveyance in controversy to secure, was fortifying the bank of which he was president, against any financial stringency that would be contemplated in the ordinary course of business. Both Rogers and Kavanaugh assured the representatives of the appellant that the security Hurst was offering for the loan was more than ample.

If we divorce in our minds the condition in which the bank was shown to be after the institution was placed in the hands of a receiver, from the condition which it was represented to be in by Hurst and from the condition in which it appeared to be so far as the transaction of its business was concerned before the receivership, we can see clearly that the representatives of appellant had no cause to believe, at the time they were negotiating the loan to the bank for the additional five thousand dollars, that the same was in an insolvent condition or that the conveyance was being made to the appellant in contemplation of insolvency. Hurst had made application to appellant for a loan of $10,000 and appellant had a committee whose business it was to pass on loans and to examine into the securities offered.

Learned counsel for appellee insist that the fact that appellant sent three of its representatives hundreds of miles to look into the value of the security did not comport with the belief on its part that the bank was in a solvent condition.

But under the circumstances the sending of these representatives to Little Rock was but a natural and prudent business transaction. The bank was already indebted to appellant in the sum of $9,000, and Hurst was seeking an additional loan of $10,000; so it was but to be expected that the appellant would adopt usual and precautionary measures of prudent business to inquire into the value of the security offered, and as this was done through its committee for that purpose, the fact that this committee was sent to Little Rock does not tend to prove that appellant was advised at the time that the bank was in an insolvent condition. The appellant adopted a prudent method of ascertaining the value of the security which Hurst had offered, and the circumstances as disclosed by the representations of Hurst and other leading business men whom they consulted after they arrived on the ground and their examination of the property were well calculated to create the belief on their part that Hurst was sincere in his representations and that the institution of which he was at the head was solvent. Certainly, there was nothing in the surroundings, as we view the testimony, that would cause a reasonably prudent business man to believe that the Valley Savings Bank was insolvent or contemplating insolvency at the time of the execution of the conveyances in suit.

Because the representatives of appellant included the indebtedness represented by the certificates of deposit in the new loan which they were making to the bank and made the security cover also this pre-existing indebtedness did not tend to show that appellant believed that the bank was insolvent. It was nothing more than a purely business proposition which any prudent business man would have adopted under the circumstances, no matter however solvent he may have believed the debtor to have been. The wise creditor, as many of the witnesses, in effect, expressed it, would take all the security he could get.

In *Silas B. Dutcher, Assignee, etc., Respondent,* v. *Importers' & Traders' Bank,* 59 N. Y. 5, it was held that

payment by a bank, known by its managing officers and agents to be insolvent but continuing in business, of the check of a depositor wholly ignorant of its financial condition is not within the meaning of statutes declaring it unlawful for any incorporated company to make any transfer or assignment in contemplation of its insolvency, and such payment can not be recovered back by an assignee of the insolvent bank appointed under the bankrupt law of the United States.

(4) Now, here the negotiations between the appellant and the Valley Savings Bank was but an arrangement by which the appellant was securing its certificates of deposit that were already past due, but payment of which it had not demanded, and also securing an additional loan which the representatives of appellant were made to believe would meet the maturing obligations of the bank and would be sufficient for all its purposes. The bank at that time was a going concern and had the right to borrow money and to give security for the same. As is said by Mr. Thompson:

"It is very generally conceded by all the cases that even an insolvent corporation may mortgage or assign property sufficient to secure any personal advances or loans where these are used in good faith for the purpose of paying its debts." 5 Thompson on Corporations, § 6178.

Appellee contends that the president and secretary of the bank had no authority to execute the deed in controversy for the bank.

The testimony showed that the bank was also engaged in the business of buying and selling real estate. It was shown that the president and secretary had executed deeds for the bank from the time of its organization and that all the committees and officers of the bank had knowledge that they executed same. The secretary testified that his recollection was that the by-laws authorized the president and secretary to execute such convey-

ances. This testimony was sufficient to bind the bank. See *Wales-Riggs Plantations* v. *Caston*, 105 Ark. 641; *Merchants & Farmers Bank* v. *Harris*, 103 Ark. 283.

The court, therefore, erred in holding that the conveyances of the real estate in controversy were made in contemplation of insolvency and that the same constituted an unlawful preference under the statute in favor of the appellant to the extent of $9,000. The judgment is, therefore, reversed and the cause is remanded, with directions to enter a judgment in favor of the appellant for the full amount of its debt as secured by the conveyances in controversy, and for such other and further proceedings as may be necessary to enforce its rights under those conveyances, not inconsistent with this opinion.